UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                          CRIMINAL NO. 3:17-CR-33-DPJ-LRA

ZARIA FRANCO

ORDER

Defendant Zaria Franco asks the Court to reduce her sentence under 18 U.S.C. § 3582(c)(1)(A) "to time served, imposing a term of supervised release of about six months in addition to the three years [already] imposed . . . to be served on home detention." Mot. [24]. Franco claims that her medical condition, coupled with the ongoing novel Coronavirus pandemic, provide "extraordinary and compelling reasons" to justify her release from confinement. 18 U.S.C. § 3582(c)(1)(A). Because Franco has not yet exhausted her administrative remedies under § 3582(c)(1)(A), her motion is denied without prejudice.

I.      Facts and Procedural History

On March 14, 2017, Franco pleaded guilty to violating 18 U.S.C. § 1952(a)(3) based on her role in transporting drugs and the proceeds of drug sales between Texas and Mississippi. On January 23, 2018, the Court sentenced Franco to 37 months' imprisonment, with a self-report date of March 3, 2018.

Franco, a 30-year-old Hispanic female, suffers from hypertension. At the time she filed her motion, Franco was housed at Federal Prison Camp Bryan in Bryan, Texas, but she has since been moved to the Residential Reentry Management facility in San Antonio, Texas. According to the Bureau of Prisons (BOP) website, Franco's projected date of release from the halfway house is October 22, 2020.

II.     Analysis

The threshold issue is whether the Court has authority to consider Franco's motion. She invokes 18 U.S.C. § 3582(c)(1)(A)(i), which states:

> The court *may not* modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

(Emphasis added). The parties agree that Franco did not exhaust as contemplated by the statute. Mot. [24] ¶ 32; Resp. [26] at 7.[1]

Despite that shortcoming, Franco says "[t]he Court can waive the 30-day requirement for exhaustion of administrative remedies due to the high risk that Ms. Franco could become infected with COVID-19." Reply [28] at 7. In making that argument, Franco abandons the statutory text and overlooks relevant Supreme Court precedent.

The Court's analysis of the statutory exhaustion requirement "begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). As noted, § 3582(c)(1) states that "the court may not" modify Gates's sentence until she exhausts her remedies. Nothing in § 3582(c) grants authority to waive this requirement.

Franco's legal authority does not say otherwise. According to her, "courts throughout the country have continued to waive the administrative exhaustion requirements under the First Step

---

[1] When the Court discusses § 3582(c)'s exhaustion requirement, it refers to either of the two alternatives provided by the statute: complete exhaustion of denial of a request that BOP file a motion on the inmate's behalf *or* the expiration of 30 days from that request with no response from BOP.

Act, where circumstances warrant." Reply [28] at 8. To support that contention, Franco cites cases where the inmates sought sentence modifications under different First Step Act provisions through petitions filed under 28 U.S.C. § 2241. *See Gurzi v. Marques*, No. 18-CV-3104-NEB-KMM, 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019); *Washington v. Bur. of Prisons*, No. 1:19-CV-01066, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019). Significantly though, the exhaustion requirements for § 2241 are judicially created. *See Mayberry v. Pettiford*, 74 F. App'x 299, 299 (5th Cir. 2003) (noting that exhaustion under § 2241 is a judicially created mandate); *see also Leuth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (explaining that the exhaustion requirement under 2241 is "judicially created, not jurisdictional").

When—as here—Congress requires exhaustion, the obligations become mandatory. The United States Supreme Court explained why in *Ross v. Blake*, while examining the statutory exhaustion requirements under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). 136 S. Ct. at 1855.[2] Although the PLRA itself requires exhaustion, the Fourth Circuit Court of Appeals concluded that when "special circumstances" exist, district courts have authority to waive those exhaustion requirements. *Id*. The Supreme Court disagreed:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. *See McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969) ("The doctrine of exhaustion of administrative remedies . . . is, like most judicial doctrines, subject to numerous exceptions"). But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

*Id.* at 1857. As for the Fourth Circuit's special-circumstances test, the Supreme Court held that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any

---

[2] Section 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

3

'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Id.* at 1856.

The same is true here. Like the PLRA, § 3582(c)(1)(A) is a statutory exhaustion requirement that offers no discretion for judge-made exceptions. Instead, the statute states that the Court "may not" modify Franco's sentence until she exhausts her remedies. *See Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020) (holding that the PLRA's "exhaustion obligation is mandatory—there are no 'futility or other [judicially created] exceptions [to the] statutory exhaustion requirements'") (quoting *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)). When a mandatory exhaustion rule like this exists, the Court "must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). In this case, the Government raised Franco's failure to exhaust.[3]

On a final note, the Court shares Franco's concern for inmate safety. That said, courts from across the country have concluded that they lack authority to waive § 3582(c)(1) even when faced with COVID-19 outbreaks. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that failure to exhaust "presents a glaring roadblock foreclosing compassionate release at this point"); *see also United States v. Van Sickle*, No. 18-250-JLR, 2020 WL 2219496, at *4 (W.D. Wash. May 7, 2020) ("[B]oth this court and other district courts in the ninth circuit which have considered this issue have nearly unanimously concluded that failure to exhaust administrative remedies is fatal to a compassionate release motion even in light of the

---

[3] Some courts have held that waiver is beside the point because § 3582(c)(1) is jurisdictional. *See, e.g.*, *United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020) ("The exhaustion requirement contained in § 3582(c)(1)(A) is jurisdictional and cannot be waived, even due to emergencies such as the COVID-19 pandemic.") (collecting cases). Whether that is true is debatable but irrelevant in the present case because the Government has not waived exhaustion.

4

urgency created by COVID-19."); *United States v. McIndoo*, No. 1:15-CR-142-EAW, 2020 WL 2201970, at *9 (W.D.N.Y. May 6, 2020) ("[I]n the absence of waiver or facts amounting to estoppel, this Court is without the authority to excuse Defendant's failure to comply with § 3582(c)(1)(A)'s exhaustion requirement."); *United States v. Pack*, No. 2:17-CR-20002-10, 2020 WL 2174447, at *2 (W.D. Tenn. May 5, 2020) (concluding that because defendant did not exhaust, "[t]he Court does not have authority to consider [his] Motion" under § 3582(c)); *United States v. Roberts*, No. 15-135-01, 2020 WL 2130999, at *2 (W.D. La. May 5, 2020) ("Section 3[58]2(c)(1)(A) does not provide this Court with the equitable authority to excuse Roberts' failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Brown*, No. 04-CR-143-DRH, 2020 WL 2128861, at *3 (E.D.N.Y. May 5, 2020) ("While the current health emergency warrants consideration of compassionate release requests in an expedited manner, Section 3582 does not allow for the waiver of exhaustion due to exigent circumstances."); *United States v. Gomez*, No. 2:18-CR-1435-1, 2020 WL 2061537, at *1 (S.D. Tex. Apr. 29, 2020) (observing that "[c]ourts in the Southern District of Texas have ruled that defendants who move for compassionate release still need to exhaust administrative rights . . . in order to bring a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)" (collecting cases)); *United States v. Nevers*, No. 16-088, 2020 WL 1974254, at *2 (E.D. La. Apr. 24, 2020) ("Because the Court cannot consider Petitioner's request for instant release or home confinement until she has complied with the exhaustion requirements of § 3582(c)(1)(A), the Court must deny the instant motion for failure to comply with the mandatory exhaustion requirements under § 3582(c)(1)(A)."). Franco must comply with § 3582(c)(1)(A).[4]

---

[4] A few courts have reached a different conclusion by ignoring the words "may not" in their statutory construction and suggesting that the remaining language in § 3582(c)(1)(A) is less strict than the PLRA language *Ross* found to be mandatory. According to them, inmates may bypass

5

III.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Franco's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied without prejudice. Franco may re-file her motion once she achieves one of the two avenues for exhaustion under § 3582(c)(1)(A).[5]

---

exhaustion altogether by simply waiting 30 days after making a request to the warden, so unlike under the PLRA, exhaustion is not mandatory. With deference, the words "may not" are critical. A court "may not reduce a term of imprisonment" unless the inmate first makes a request to the warden and either appeals an adverse ruling or receives no response within 30 days. 18 U.S.C. § 3582(c)(1)(A). That the inmate can proceed after making a request and waiting 30 days does not mean the request was never mandated. Indeed the 30-day waiting period is a statutory futility exception like the one in the PLRA. As *Ross* notes, the PLRA "contains its own, textual exception to mandatory exhaustion" making judge-made exceptions improper. 136 S. Ct. at 1858. Section 1997(e)(a) states that inmates must exhaust "available remedies." Accordingly, inmates "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858. At bottom, § 3582(c)(1)(A) provides two exceptions to the dictate that courts "may not reduce a term of imprisonment," both of which require an initial request to the warden. 18 U.S.C. § 3582(c)(1)(A). The statute provides no basis for creating exceptions.

[5] The Court anticipates that Franco will refile her motion once she exhausts administrative remedies. When she does, the parties may brief the issues they deem relevant. That said, they are instructed to at minimum address three specific points. First, Franco asks the Court to "grant her incarceration of time-served, followed by an additional supervised release term of six months tacked on to the current three years of supervised release" to be "served on home confinement." Mot. [24] ¶ 43. The statutory maximum sentence for the crime of conviction is 5 years' incarceration, making it a Class D felony, for which the maximum available term of supervised release is 3 years. 18 U.S.C. § 1952(a)(3); 18 U.S.C. § 3559(a)(4); 18 U.S.C. § 3583(b)(2). So Franco has already received the maximum period of supervised release permitted by the statute. The parties should address whether Franco's original request could be accommodated considering these facts. Alternatively, Franco argues that the Court "can simply resentence [her] to serve the remainder of her sentence in home confinement." Mot. [24] ¶ 43; *see also* Reply [28] at 20 (requesting that the Court "order her immediate release from prison, and further order that she immediately serve the remainder of her sentence on home confinement"). Section 3582(c)(1)(A) allows the court to "modify the term of imprisonment," but it does not mention modifying the physical location where the defendant serves her term. Some courts have therefore held that they lacked authority to order a defendant to home confinement. *See, e.g.*, *United States v. Johnson*, No. CR 17-165, 2020 WL 2526965, at *2 (E.D. La. May 18, 2020). The parties should address this point as well. Finally, the parties should address whether Franco's purported health condition creates an extraordinary and compelling reason to modify the sentence considering the incidents of COVID-19 at her current facility.

**SO ORDERED AND ADJUDGED** this the 10th day of June, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE
